## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 14 2017, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Esther Martin,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

July 14, 2017

Court of Appeals Case No.
20A05-1605-CR-1016

Appeal from the Elkhart Superior Court

The Honorable Teresa L. Cataldo, Judge

Trial Court Cause No.
20D03-1110-FA-27

**Barnes, Judge.**

# Case Summary

Esther Martin appeals her convictions and eighty-year sentence for two counts of Class A felony child molesting. We affirm in part, reverse in part, and remand.

# Issues

The issues before us are:

    I.     whether the trial court properly admitted Martin's recorded interview with police into evidence; and

    II.    whether her sentence is inappropriate.

# Facts

Martin helped provide child care to brothers B.H. and A.H. at a daycare that Martin's mother, Arlene Martin, operated out of her home in rural Elkhart County. Martin sometimes was left alone with the children while Arlene cared for her own mother. Martin lived with her parents and did not work outside the home.

In January 2011, B.H. told his father that Martin had been touching him inappropriately. At this time, B.H. was ten years old, and Martin was twenty-six. B.H. believed that the touching began when he was six or seven years old. B.H. said that the first occasion occurred when he was in the bathroom, and Martin came in, closed the door, and kissed his "privates." Tr. p. 923. Further

similar incidents involving Martin kissing B.H.'s genitals or putting his penis in her mouth occurred once or twice a week over the next few years.

[5] B.H.'s parents reported his statements to police, who then arranged to interview Martin. Before the interview, Martin's father told Detective Ryan Hubbell of the Elkhart County Sheriff's Department that Martin communicated at the level of a twelve-year-old child. Detective Hubbell discussed this information with coworkers and considered taking Martin to a local child and family advocacy center that specializes in child abuse cases for an interview but ultimately decided to interview her at the station. Detective Hubbell began the interview by explaining Martin's *Miranda* rights to her. Martin had never heard of the rights before or seen them discussed on television; she and her parents are "Old Order" Mennonites. Detective Hubbell went through each of the rights individually and attempted to explain them to Martin in language she would understand. Martin was not entirely clear as to what an attorney is or does; Detective Hubbell explained that an attorney was someone who could give her advice like her father did, but who knew more about the law than her father. After initialing that she understood each of the rights and signing a waiver of her rights, Detective Hubbell began questioning Martin.

[6] Throughout the eighty-minute-long interview, Martin consistently and repeatedly denied ever touching B.H. in a sexual manner. She did say that B.H. once tried to look up her dress and that she scolded him, and on at least one other occasion, B.H. brushed up against her and touched her and she again scolded him. Martin said that B.H. referred to her as his "girlfriend" but that

she was uncomfortable being around B.H. as he got older because he talked "yucky" and acted "disgusting." Ex. 2. She also said that B.H. talked about "yucky" movies he and his brothers sometimes watched when their parents were not home. *Id.* Martin consistently referred to penises as "pee pees," and at one point asked Detective Hubbell why he was repeatedly talking about "peanuts." *Id.* Detective Hubbell explained that penises were the same as "pee pees." *Id.* Martin also said it made her "feel like throwing up" to think about kissing a penis. *Id.*

[7] Also during the interview, Martin said that ten to fifteen years ago she had a "problem" about wanting to touch the "pee pees" of children brought to her mother's daycare but that she had grown out of it. *Id.* She said that once, when she was eleven or twelve, she touched the "pee pee" of a female infant, but her mother saw her do it and told her "not to play with their pee pee or whatever." *Id.* Martin also described one incident, when she was about ten years old, when she touched her younger cousin's penis. Martin said she has prayed regularly about her "problem" since she touched the infant girl, and that if she does not pray, she feels "rebellious" and wants to kill herself. *Id.* She said she has never had a boyfriend and has no interest in having one or getting married because she does not "understand about a lot of stuff." *Id.*

[8] On October 7, 2011, the State charged Martin with two counts of Class A felony child molesting. In December 2011, psychologist Gerald Wingard evaluated Martin at defense counsel's request. Dr. Wingard concluded that Martin had a full-scale IQ of sixty-two, which placed her in the range of mildly

mentally handicapped. According to Dr. Wingard, a person's IQ does not change significantly over the course of their life. Dr. Wingard also evaluated Martin's abilities at certain tasks such as reading comprehension, math skills, and spelling; the tests indicated Martin pronounced words equivalent to a twelve-year-old but only understood words equivalent to a nine year and eight-month-old child. Martin had to repeat the fifth grade as a child and did not attend school beyond eighth grade.

[9] Defense counsel did not move to have Martin's competency to stand trial evaluated. However, after a jury had been seated for a trial set to commence on July 7, 2014, one of the jurors sent a note to the trial judge asking if Martin's mental state had been evaluated. After receiving that note and speaking with Dr. Wingard over the phone, the State agreed to Martin's request for a mistrial and that her competency be evaluated. Dr. Wingard opined that Martin was incompetent to stand trial, as did two psychiatrists appointed by the trial court.

[10] The trial court ordered Martin committed to the Madison State Hospital. After three months, a psychologist and a psychiatrist at the hospital agreed that Martin was competent to stand trial. They believed that her IQ score of sixty-two underestimated her mental abilities and that she was properly diagnosed as having low intellectual functioning rather than mild mental retardation. Additionally, it was reported that while hospitalized, Martin engaged in repeated improper conduct with a fellow patient, such as grabbing her buttocks, touching her face and attempting to kiss her, and hugging her. Martin also

once grabbed a female staff member's buttocks. Martin denied engaging in this behavior or claimed not to remember it.

[11] Before Martin's second jury trial commenced, defense counsel moved to suppress her interview with Detective Hubbell on the basis that she did not freely and voluntarily waive her *Miranda* rights due to her mental disability. The trial court denied this motion. At trial, the interview was played to the jury, although Martin's references to having touched other children when she herself was a child were redacted.

[12] On January 27, 2016, the second jury found Martin guilty of both counts of Class A felony child molesting. The trial court sentenced Martin to terms of forty years executed on each count, to be served consecutively for a total term of eighty years. Martin now appeals.

# Analysis

## I. Admission of Police Interview

[13] Martin first claims the trial court improperly admitted her police interview into evidence because she did not understand or knowingly waive her *Miranda* rights. "The admissibility of a confession is controlled by determining from the totality of the circumstances whether the confession was made voluntarily and was not induced by violence, threats, or other improper influences that overcame the defendant's free will." *Carter v. State*, 730 N.E.2d 155, 157 (Ind. 2000). "The same test determines whether *Miranda* rights were voluntarily waived." *Id.* "In evaluating a claim that a statement was not given voluntarily,

the trial court is to consider the totality of the circumstances, including the crucial element of police coercion, the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health." *Wells v. State*, 904 N.E.2d 265, 271 (Ind. Ct. App. 2009), *trans. denied*. Violations of *Miranda* will not result in reversal of a conviction if the State can show beyond a reasonable doubt that the error did not contribute to the verdict. *Rawley v. State*, 724 N.E.2d 1087, 1090 (Ind. 2000) (citing *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824 (1967)). In order to meet this standard, the State must demonstrate that the alleged error was unimportant in relation to everything else the jury considered on the issue in question, as revealed by the record. *Alford v. State*, 699 N.E.2d 247, 251 (Ind. 1998).

[14] Here, even if we were to conclude that Martin's interview with Detective Hubbell was conducted in violation of *Miranda*, in light of her low IQ, we conclude any such error in the admission of that interview into evidence would be harmless beyond a reasonable doubt. Martin never confessed during that interview, and instead repeatedly denied that she initiated any sexual conduct with B.H. Rather, she discussed instances of inappropriate behavior by B.H. that she rebuffed. Although Martin did mention instances of inappropriate sexual behavior by her when she was much younger, those statements were redacted when the video was played for the jury. By contrast, B.H. testified about the repeated occurrences of sexual conduct by Martin. His pretrial forensic interview, describing those occurrences, also was introduced during trial. It is difficult to discern that the playing of the interview of the jury could

have had a substantial impact on its verdict in light of B.H.'s clear testimony. In other words, the interview was unimportant in relation to the evidence supporting Martin's conviction and its introduction was harmless error, if error at all.[1]

## II. *Appropriateness of Sentence*

We now address Martin's claim that her eighty-year sentence is inappropriate under Indiana Appellate Rule 7(B) in light of the nature of the offenses and her character. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *aff'd on r'hg*. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." *Id.*

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than

---

[1] Martin claims in part in her reply brief that Detective Hubbell improperly bolstered B.H.'s credibility by repeatedly stating during the interview that he did not think B.H. had lied when he accused Martin of molesting him. However, Martin does not develop a cogent argument supported by citation to authority that Detective Hubbell's statements constituted improper vouching for B.H.

the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. *Id.* at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010). A conviction for a Class A felony carries a sentencing range of twenty to fifty years, with thirty years being the advisory term.[2] Ind. Code § 35-50-2-4(a).

[17] With respect to Martin's character, she has no prior criminal history. Generally, leniency should be shown to persons who have not yet been through the criminal justice system. *Filice v. State*, 886 N.E.2d 24, 40 (Ind. Ct. App. 2008), *trans. denied*. It also is difficult to place much negative weight upon her admission to two instances of inappropriate sexual conduct when she was ten to twelve years old. We also note the evidence of Martin's limited intellectual functioning; although there was some disagreement as to the extent of that limitation, there does seem to be no doubt that it exists, whether as a result of mental disability, a sheltered upbringing with limited education, or a

---

[2] Martin committed these offenses before the change from Class A-D to Level 1-6 felonies took effect.

combination of the two. The several instances of inappropriate conduct that were sexual in nature while she was at Madison State Hospital is troubling; however, the conduct was not directed toward minors.

[18] Regarding the nature of the offenses, there is evidence Martin committed considerably more than two acts of molestation upon B.H. The events occurred repeatedly over a span of several years, beginning when B.H. was about six or seven. Martin had a position of trust over B.H. as his babysitter. There is no evidence that any of the acts resulted in physical injury to B.H., or that Martin used force or threats to coerce B.H. Likewise, there is no evidence that Martin victimized anyone other than B.H.

[19] We acknowledge that, when exercising our power to review and revise a sentence, we are not required to compare a defendant's sentence with sentences received by other defendants in similar cases. *Corbally v. State*, 5 N.E.3d 463, 471-72 (Ind. Ct. App. 2014). "However, comparison of sentences among those convicted of the same or similar offenses can be a proper consideration when deciding whether a particular sentence is inappropriate." *Id.* at 472. "[A] respectable legal system attempts to impose similar sentences on perpetrators committing the same acts who have the same backgrounds." *Serino v. State*, 798 N.E.2d 852, 854 (Ind. 2003). With that in mind, we will consider several cases with similar scenarios.

[20] In *Harris v. State*, 897 N.E.2d 927 (Ind. 2008), the defendant was convicted of two counts of Class A felony child molesting based on two incidents of

intercourse with the eleven-year-old daughter of his live-in girlfriend; the girl considered him her father. The two incidents of which he was convicted were only two of many incidents that had occurred since the girl was eight years old. The trial court imposed consecutive sentences of fifty years for a total term of 100 years. Our supreme court reduced this to concurrent terms, or a total of fifty years, based on the two counts being identical and involving the same victim, as well as the defendant's minimal criminal history. *Harris*, 897 N.E.2d at 930.

[21] In *Tyler v. State*, 903 N.E.2d 463 (Ind. 2009), the defendant was convicted of two counts of Class A felony child molesting, two counts of Class C felony child molesting, and one count of Class D felony vicarious sexual gratification for an incident involving five different children. He was sentenced to a total term of 110 years, which included an habitual offender enhancement. Our supreme court reduced the sentence to a total of sixty-seven and one-half years. It based the reduction upon the fact that the defendant did not use force on or physically injure the children, that he was not in a position of trust, and he had no prior sex offense convictions. *Tyler*, 903 N.E.2d at 469. Additionally, the court noted evidence of the defendant having had mental and emotional health problems from an early age and that he had an IQ of between 61 and 72. *Id.*

[22] The final case we mention for comparison purposes is *Pierce v. State*, 949 N.E.2d 349 (Ind. 2011). In that case, the defendant repeatedly molested the ten-year-old daughter of his live-in girlfriend over the course of a year. He was convicted of three counts of Class A felony child molesting, one count of Class

C felony child molesting, and was found to be a repeat sexual offender based upon a prior Class C felony molesting conviction. He received a total sentence of 124 years, but our supreme court reduced it to a total of eighty years. *Pierce*, 949 N.E.2d at 352-53. It acknowledged the defendant's position of trust over the victim and that the offenses occurred repeatedly, but also noted that only one child was harmed. *Id.* It also noted that, aside from the prior molesting conviction that formed the basis of the repeat sexual offender enhancement, the defendant had no prior criminal history. *Id.*

[23] The State cites *Pierce* as supporting the eighty-year sentence in this case. However, that defendant was convicted of more offenses than Martin and additionally was found to be a repeat sexual offender. As such, we take more guidance from the fact that our supreme court reduced that defendant's sentence by over a third.

[24] Martin's position of trust over B.H. and the fact that repeated incidents occurred over several years are egregious circumstances, but are similar to those in *Harris* and *Pierce*. As was the case in *Harris* and *Pierce*, B.H. was the only victim and the alleged incidents all were similar. As was the case in *Tyler*, there was no evidence Martin used force or threats against B.H. and no evidence of physical injury to him. Martin also has no criminal history, unlike the defendants in *Harris*, *Tyler*, and *Pierce*. She has documented mental limitations, like the defendant in *Tyler*, although they do not appear to be as severe as that defendant's problems.

We are cognizant that crimes against children are particularly heinous. *See Pierce*, 949 N.E.2d at 352. The repeated occurrences and Martin's position of trust over B.H. warrant an enhanced sentence. But given the nature of the offenses of which Martin was convicted and her character, and after considering cases from our supreme court addressing similar scenarios, we cannot conclude that those sentences should be served consecutively. We find her aggregate eighty-year sentence to be inappropriate. We revise Martin's sentence and order that her two forty-year sentences be served concurrently rather than consecutively.

## Conclusion

Even if it was erroneous to admit Martin's interview with police into evidence, any such error was harmless beyond a reasonable doubt. We affirm her convictions. However, we reverse her sentence and remand for the trial court to enter an amended sentencing order directing that her forty-year sentences be served concurrently.

Affirmed in part, reversed in part, and remanded.

Crone, J., concurs.

Baker, J., concurs and dissents with separate opinion.

| | |
|---|---|
| Esther Martin,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | Court of Appeals Case No.<br>20A05-1605-CR-1016 |

**Baker, Judge, concurring in part, dissenting in part.**

[28] While I concur as to the first issue because of harmless error, I must dissent as to the sentencing issue.

[29] The majority has eloquently explained why the eighty-year sentence is inappropriate. I believe that explanation compels a sentence for each conviction of no more than the advisory sentence of thirty years and, like the majority, believe that the sentences should be concurrent.

[30] While Martin was in a position of trust and there were more incidents than charged, the evidence is without challenge that because of Martin's mental limitations, she was found to be incompetent to stand trial at one time, and she has no criminal history.

[31] Thus, I would believe a thirty-year sentence appropriate.